1

2

3

4

5

6                              UNITED STATES DISTRICT COURT

7                            NORTHERN DISTRICT OF CALIFORNIA

8

9    TERESA PEACE,                            Case No. 17-cv-04410-JSC
                    Plaintiff,

10

11          v.                                **ORDER RE: CROSS-MOTIONS FOR
                                              SUMMARY JUDGMENT**
     NANCY A. BERRYHILL,

12                                            Re: Dkt. Nos. 16 & 19
                    Defendant.

13

14

15          Plaintiff Teresa Peace seeks social security benefits for a combination of mental and

16   physical impairments, including: cervical and lumbar degenerative disc disease with disc

17   protrusions and associated stenosis, left-sided meniscus tear, status post arthroscopic surgery,

18   carpal tunnel syndrome, myofacial pain syndrome, depression, stress, and anxiety.

19   (Administrative Record ("AR") 24, 397.)  Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this

20   lawsuit for judicial review of the final decision by the Commissioner of Social Security

21   ("Commissioner") denying her benefits claim.  Now before the Court are Plaintiff's and

22   Defendant's Motions for Summary Judgment.[1]  (Dkt. Nos. 16 & 19.)  Because the Administrative

23   Law Judge's Step Two determination that Plaintiff did not have a severe mental impairment is not

24   supported by substantial evidence, the Court GRANTS Plaintiff's motion in part, DENIES

25   Defendant's cross-motion, and REMANDS for new proceedings consistent with this Order.

26

27

28   [1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c). (Dkt. Nos. 8 & 9.)

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

**PROCEDURAL HISTORY**

In November 2012, Plaintiff protectively filed applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act and for a claim for Disability Insurance Benefits under Title II. (AR 286; 294.) Plaintiff alleged disability beginning November 3, 2012. (AR 21.) The application was denied initially and on reconsideration. (AR 104-69.) Plaintiff then filed a request for a hearing before an ALJ. (AR 187.)

On August 17, 2015, a hearing was held before ALJ Richard Laverdure in Oakland, California, during which both Plaintiff and a vocational expert ("VE"), Timothy Farrell, testified. (AR 21.) Following the hearing, the ALJ submitted interrogatories to medical expert Dr. Anthony Francis and Plaintiff's counsel requested an opportunity to cross-examine Dr. Francis. (*Id.*) Because Dr. Francis thereafter became unavailable, claimant was offered a new hearing which

1  occurred on March 15, 2016.  (*Id.*)  At the second hearing, Plaintiff, medical expert Dr. Ronald

2  Kendrick, and VE Jeffrey Malmuth testified.  (*Id.*)

3  **A. The ALJ's Findings**

4  On April 28, 2016, the ALJ issued a written decision denying Plaintiff's application and

5  finding that Plaintiff was not disabled within the meaning of the Social Security Act and its

6  regulations taking into consideration the testimony and evidence, and using the SSA's five-step

7  sequential evaluation process for determining disability.  (AR 21-35.); *see* 20 C.F.R. §§

8  404.1520(g), 416.920(g).

9  At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity

10  since November 3, 2012, the alleged onset date.  (AR 23); *see* 20 C.F.R. §§ 404.1571 *et seq.*,

11  416.971 *et seq*.

12  At step two, the ALJ determined that Plaintiff had the following severe impairments of

13  cervical and lumbar degenerative disc disease, with disc protrusions and associated stenosis; left-

14  sided meniscus tear, status post arthroscopic surgery, and mild right-sided carpal tunnel syndrome.

15  (AR 24); *see* 20 C.F.R. §, 416.920(c).  However, the ALJ concluded that Plaintiff's depression and

16  anxiety when considered either singly or in combination did not meet the criteria for a "severe"

17  mental impairment per se or a severe mental impairment that had lasted for the required durational

18  period of at least 12 continuous months.  (AR 24.)

19  At the third step, the ALJ concluded that Plaintiff did not have an impairment or a

20  combination of impairments that meet or medically equal the severity of one of the listed

21  impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 27.)  At this step, the ALJ

22  considered whether Plaintiff's physical impairments met the musculoskeletal disorders and

23  dysfunction listings: 1.02A, 1.02B, or 1.04A.  The ALJ concluded that there was insufficient

24  evidence in the current objective medical record which would establish that Plaintiff met or

25  exceeded any of these listings.

26  The ALJ concluded that Plaintiff had the residual functional capacity to perform a

27  narrowed range of light work, as defined in 20 CFR 404.1567(b) and 416.967(b).  Specifically,

28  she could lift and carry 10 pounds on a frequent basis; lift and carry 15 pounds on an occasional

3

1    basis; sit for up to six hours out of an eight hour workday with normal breaks; stand and/or walk

2    combined for up to four hours out of an eight hour workday with normal breaks; but was

3    precluded from climbing ladders, ropes, or scaffolds; could perform occasional balancing,

4    stooping, kneeling, crouching, crawling, and climbing of ramps/stairs; could frequently use the

5    bilateral upper extremities for reaching, handling, fingering, and feeling; and that she should not

6    be exposed to heavy vibration, equipment, or tools.  (AR 28.)   To reach this conclusion, the ALJ

7    weighed the medical evidence and Plaintiff's testimony and concluded that her subjective

8    complaints were "not entirely supported by the objective record."  (AR 31.)  The ALJ found that

9    the medical record did not establish that her impairments, considered singly or in combination,

10   would preclude her from performing a range of light work activity.  (AR 32.)

11        At the fourth step, the ALJ found that Plaintiff was not able to perform her past relevant

12   work.  (*Id*.)

13        At the fifth step, the ALJ concluded that there were, however, other jobs that existed in

14   significant numbers in national economy that she could perform.  (AR 34.)

15        **B. Appeals Council**

16        Plaintiff filed a request for review on May 9, 2016, arguing that the ALJ committed errors

17   of law and that his decision was not supported by substantial evidence.  (AR 283.)  On June 16,

18   2017, the Appeals Council considered Plaintiff's request for review and denied review, making the

19   ALJ's decision final.  (AR 1–4.)  In doing so, the Appeals Council noted that Plaintiff had

20   submitted additional evidence with her appeal.  The Appeals Council noted that the majority of the

21   evidence post-dated the ALJ decision and that it would not consider the evidence because she

22   would need to file a new application for disability benefits based on the evidence.  The Appeals

23   Council concluded that the evidence she offered which predated the ALJ's decision did "not show

24   a reasonable probability that it would change the outcome of the decision" and thus declined to

25   consider the evidence.  (AR 2.)

26        **C.  This Action**

27        Plaintiff commenced this action for judicial review on August 3, 2017 pursuant to 42

28   U.S.C. §§ 405(g), 1383(c).  (Dkt. No. 1.)   Both parties thereafter consented to the jurisdiction of a

4

1    magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 8 & 9.)  Plaintiff then filed her

2    motion for summary judgment and the Commissioner filed her cross-motion.  (Dkt. Nos. 16 &

3    19.)

4                                              **DISCUSSION**

5           Plaintiff raises four issues with respect to the ALJ's decision.  First, Plaintiff insists that the

6    ALJ's Step Two determination that Plaintiff's depression was not a severe medical impairment

7    was not supported by substantial evidence. Second, Plaintiff maintains that the ALJ's adverse

8    credibility finding was in error.  Third, Plaintiff contends that the ALJ erred with respect to the

9    weighing of the medical evidence and in particular, in rejecting the opinion of Plaintiff's treating

10   physician Dr. Ceci.  Finally, Plaintiff requests remand based on new and material evidence

11   documenting her mental health conditions.

12   **A.      The ALJ's Step Two Determination**

13   **1) The ALJ's Step Two Determination was Not Supported by Substantial Evidence**
     The existence of a severe impairment is demonstrated when the evidence establishes that
14

15   an impairment has more than a minimal effect on an individual's ability to perform basic work

16   activities. *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (citing *Smolen*, 80 F.3d at

17   1290). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do

18   most jobs," which includes physical functions such as walking, standing, sitting, pushing,

19   carrying; capacities for seeing, hearing and speaking; understanding, carrying out, and

20   remembering simple instructions; using judgment; responding appropriately to supervisors, co-

21
     workers, and usual work situations; and dealing with changes in a work setting.  20 C.F.R. §
22

23   404.1521(b).  This inquiry is "a de minimis screening device to dispose of groundless claims."

24   *Smolen*, 80 F.3d at 1290 (citation omitted).  An impairment is not severe only if it is a slight

25   abnormality with "no more than a minimal effect on an individual's ability to work." *See* Social

26   Security Ruling ("SSR") 82-28, 1985 WL 56856, at *3 (1985); *Yuckert v. Bowen*, 841 F.2d 303,

27   306 (9th Cir. 1988).  A "finding of no disability at step two" may be affirmed where there is a
28

"total absence of objective evidence of severe medical impairment." *Webb*, 433 F.3d at 688. Here, the ALJ concluded that although Plaintiff had been treated for depression and anxiety, neither disorder—singly or in combination—constituted a "severe" impairment at Step Two. This finding is not supported by substantial evidence.

In reaching this conclusion, the ALJ summarized the mental health treatment evidence as follows:

> The claimant has been treated for sadness and anxiety, and was placed on psychotropic medication for depression for a period of time. However, the general consensus of the medical record is that the claimant has mild dysthymia, with no evidence of any significant mental symptomatology or functional restrictions lasting for the required durational period of at least 12 continuous months. See Exhibits 3F, 12F, 19F, 22F, and 31F.

(AR 26.) The cited exhibits, however, do not support the ALJ's conclusion.

- Exhibit 3F: a record of Plaintiff's February 4, 2013 office visit. It notes that she has a chronic adjustment order with depressed mood and just started celexa.[2] (AR 599-01.)

- Exhibit 12F: a record of Plaintiff's April 3, 2013 office visit. Plaintiff reports noncompliance with meds – "lots of stress so trouble remembering." It notes she has adjustment disorder with depressed mood. (AR 678-80.)

- Exhibit 19F: a record of Plaintiff's March 26, 2013 office visit. Includes a Medical Assessment of Employability Form that states that Plaintiff is permanently unemployable due to physical and mental disability because of "chronic pain, anxiety, depression." (AR 782.)

- Exhibit 22F: contains multiple records including therapy visits from February 19, 2014, July 30, 2014, September 12, 2014, November 6, 2014, February 5, 2015, February 26, 2015 with a licensed clinical social worker which document her depression and anxiety. (AR 794, 796, 801, 807, 813, 815.) The July 30, 2014 treatment note states that Plaintiff has "moderately severe depression." (AR 815.)

- Exhibit 31F: contains multiple records from June 2015 through February 2016. (AR 970-1004.) An August 28, 2015 treatment note states that her pain is causing a lot of depression and she has been having some SI (suicidal ideations) due to all the pain. (AR 987.) An October 21, 2015 note diagnoses her with "moderately severe depression." (AR 979.)

---

[2] Celexa is a prescription antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs) which is used to treat depression. See https://www.drugs.com/celexa.html (lasted visited July 18, 2018).

Thus, contrary to the ALJ's characterization of Plaintiff as having only "mild dysthymia, with no evidence of any significant mental symptomatology or functional restrictions," Plaintiff's medical records reflect her ongoing struggles with depression and anxiety which her treatment providers diagnosed as "moderately severe" and concluded on at least one occasion rendered her permanently disabled. (*Compare* AR 26 *with* AR 782, 815, 979, 987.)

The Commissioner's post hoc review of the medical evidence and citation to portions of the record which suggest normal findings is unavailing. *See Bray v. Commissioner of Social Security Admin*., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). "We are constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Even if this were not the law, the ALJ cannot rely on the evidence which supports his disability determination, while ignoring the medical evidence which contradicts it. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir.2001) (concluding that the ALJ's basis for rejecting the treating physician's medical opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries ... and ignored the many others that indicated continued, severe impairment"); *Williams v. Colvin*, No. ED CV 14–2146–PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination."). Here, there is a plethora of medical evidence reflecting Plaintiff's long-term depression and anxiety which the ALJ ignored without explanation.

The ALJ's reasons for rejecting the opinions of the Agency examining and consultative physicians regarding Plaintiff's mental health are likewise not supported by substantial evidence. State Agency Examining Psychologist Dr. Shertock diagnosed Plaintiff with dysthymic disorder

7

and post-traumatic stress disorder (PTSD) with a Global Assessment of Functioning (GAF) score of 50.[3] (AR 615.) Dr. Shertock concluded that Plaintiff was moderately limited in her ability to (1) maintain attention and concentration, (2) maintain adequate pace while completing tasks, (3) withstand the stress of an eight-hour day, (4) maintain adequate persistence while completing tasks, and (5) ability to endure stress; and that she was markedly limited in her ability to adapt to changes in routine work-related settings. (*Id.*) The ALJ rejected Dr. Shertock's opinion because (1) she only had access to a small part of Plaintiff's medical records so her conclusions were based almost exclusively on the Plaintiff's report of her medical history, symptomology, and functional limitations, (2) Dr. Shertock diagnosed her with PTSD, but there was no other reference to PTSD or symptoms of PTSD in her report, and (3) her report was internally inconsistent because one paragraph referred to Plaintiff using a male pronoun and appeared to be a cut and paste from another report. (AR 26.) None of these reasons holds water.

First, the ALJ erred in discounting Dr. Shertock's opinion because she only looked at a small number of records from Solano County Health and Social Services. (AR 613.) Dr. Shertock did not specify the portions of Plaintiff's records from Solano County Health and Social Services she reviewed, but it is reasonable to conclude that she reviewed the records which immediately predated Plaintiff's exam—the record contains visit notes from various providers within Solano County Health and Social Services from January 18, 2013 through June 26, 2013. (AR 595-605, 660-680, 778-782.) While there are only records of six visits which predate Dr.

---

[3] A Global Assessment of Functioning score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1165 n.1 (9th Cir. 2012). The score ranges from zero to 100, and serves as a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. *See Sigmon v. Kernan*, No. 06-5807-AHM(JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009). A GAF score between 50-41 shows Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social or occupational functioning (e.g., no friends)." Understanding the Global Assessment of Functioning Scale, Seniorhomes.com, https://www.seniorhomes.com/p/understanding-the-global-assessment-of-functioning-scale/ (last visited July 20, 2018).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Shertock's May 14, 2013 exam (AR 595-605, 680, 778-780), the treatment notes for the visits

consistently reference "stress and anxiety (AR 596), "adjustment disorder with depressed mood:

chronic" (AR 601, 680), and "depression" (AR 778, 780.) As such, these records—even if limited

in number—are contemporaneous corroboration for Plaintiff's reports of her symptoms and Dr.

Shertock's diagnosis of depression. Further, the ALJ did not explain why Dr. Shertock's review

of these records, but no other unidentified records rendered her opinion not credible.

Second, Plaintiff reported to Dr. Shertock that she has been receiving treatment for

depression since 2010 following a history of emotional abuse, domestic violence, and sexual

abuse. (*Id.*) Based on Plaintiff's statements and the medical records, Dr. Shertock concluded that

in her medical opinion, Plaintiff had PTSD. The ALJ may not simply substitute his own medical

judgment for that of a physician and reject the PTSD diagnosis out of hand. *See Day v.*

*Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her

own medical assessment beyond that demonstrated by the record); *see also Balsamo v. Chater*,

142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for

competent medical opinion") (internal quotation marks and citation omitted); *Rohan v. Chater*, 98

F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make

their own independent medical findings"). If the ALJ thought that evidence was lacking on the

question of documentation of Plaintiff's depression or PTSD, he had "an affirmative duty to

supplement [Plaintiff's] medical record, to the extent it was incomplete, before rejecting [her]

petition at so early a stage in the analysis." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir.

2005)(noting that "[t]he ALJ's duty to supplement a claimant's record is triggered by ambiguous

evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's

conclusion that the evidence is ambiguous.").

Finally, as found by the ALJ, that Dr. Shertock cut and paste from another report one

paragraph of her four-page report is not grounds to disregard her entire opinion. Again, if the ALJ

9

felt that the medical evidence from the Agency's examining physician was ambiguous, he should have clarified the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)( "An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)).

The ALJ rejected the opinions of the Agency medical consultants Drs. Gallucci and Brode because their opinions were based entirely on the assessment of Dr. Shertock and "the few Solano County records available." (AR 26.) Because the ALJ's rejection of Dr. Shertock was not supported by substantial evidence, he necessarily also erred in rejecting the opinions of the medical consultants.

Given the objective medical evidence and the opinions of the Agency examining and consulting physicians, the ALJ's determination that Plaintiff's depression and anxiety, either singly or in combination—were not severe impairment(s)—that is, that the conditions did not pose a more than a "minimal effect on [Plaintiff's] ability to perform basic work activities"—was not supported by substantial evidence. *Webb*, 433 F.3d at 686-87.

### 2) The ALJ's Error was Not Harmless

The Commissioner argues that even if the ALJ's determination was in error any such error was harmless. Not so. Here, unlike in those cases deeming a similar Step Two error harmless, the ALJ did not consider Plaintiff's depression or mental impairments when formulating his RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (concluding that "[e]ven assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" because the ALJ discussed the condition later in the analysis and factored it into the plaintiff's RFC). There is thus no way to know how Plaintiff's RFC would have been different if the ALJ had found that Plaintiff's depression was a severe impairment at Step Two. *See Smith v. Colvin*, No. 3:14-cv-01210-PA, 2016 WL 680535, at *10 (D. Or. Feb. 19, 2016) ("To establish reversible error at step two, a claimant must show that the ALJ's RFC analysis did not consider the contested step two

10

1  impairment. Mere demonstration of error in the ALJ's step two analysis does not establish

2  reversible error.")

3       The Commissioner nonetheless insists that the VE's testimony that someone with

4  Plaintiff's RFC who was limited to simple repetitive work could still find work in the national

5  economy renders any error by the ALJ harmless.   However, Dr. Shertock opined that Plaintiff was

6  moderately limited in her ability to (1) maintain attention and concentration, (2) maintain adequate

7  pace while completing tasks, (3) withstand the stress of an eight-hour day, (4) maintain adequate

8  persistence while completing tasks, and (5) ability to endure stress; and that she was markedly

9  limited in her ability to adapt to changes in routine work-related settings.  (AR 615.)   The VE

10  testified that someone with Plaintiff's RFC who was markedly limited in ability to adapt to

11  workplace changes could not perform any of the previously identified jobs.  (AR 100-02.)  The

12  Commissioner ignores the VE's testimony in this regard and argues that Dr. Shertock was not

13  really opining about what Plaintiff could do despite her limitations and instead was "merely

14  setting forth undefined moderate and marked limitations." (Dkt. No. 19 at 5:14.[4]) The

15  Commissioner's constrained reading of Dr. Shertock's opinion does not hold up.  Plaintiff was

16  sent to Dr. Shertock by the Agency for a psychological evaluation and Dr. Shertock opined under

17  the heading "work-related abilities" that Plaintiff had a marked impairment in her ability to adapt

18  to changes in routine work-related settings.  (AR 613, 615.)  There is no way to read Dr.

19  Shertock's report in this regard as not opining regarding Plaintiff's work related mental health

20  limitations.

21       The Commissioner's further suggestion that Dr. Brode and Dr. Gallucci—the consultative

22  Agency physicians who reviewed Dr. Shertock's report and some of Plaintiff's medical records—

23  "translat[ed] Dr. Shertock's statements of limitations into concrete restrictions [to] provide[] a

24  reasonable understanding of what Dr. Shertock's opinion actually means in context" is equally

25  unavailing.   (Dkt. No. 19 at 5:22-24.)  Dr. Shertock's opinion did not require translating.  And

26  even if it did, the VE's testimony did not fully account for Dr. Brode and Dr. Gallucci's

27

28  [4] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  limitations. Dr. Gallucci concluded that Plaintiff had sustained concentration and persistence

2  limitations and was moderately limited in (1) her ability to maintain attention and concentration,

3  (2) respond to changes in the work setting, and (3) her "ability to complete a normal workday and

4  workweek without interruptions from psychologically based symptoms and to perform at a

5  consistent pace without a unreasonable number and length of rest periods." (AR 114-15.) Dr.

6  Brode concurred in these findings. (AR 146-49.) The VE stated that the CFR does not define

7  moderate, it only has marked and severe. (AR 100-01.) The VE's testimony thus does not

8  address whether someone with moderate limitations in her ability to adapt to workplace changes—

9  rather than marked limitations—would be able to find work. The ALJ's question to the VE

10 inquiring as to whether someone with Plaintiff's RFC who was limited to simple, repetitive work,

11 is not the same as a limitation in the ability to adapt to workplace changes.

12          Accordingly, the ALJ's determination at Step Two finding Plaintiff's depression and

13 anxiety not severe was not supported by substantial evidence and this error was not harmless.

14 **B.      Plaintiff's Remaining Arguments**

15         The Court declines to address Plaintiff's challenge to the ALJ's adverse credibility finding

16 and his weighing of the medical evidence because the ALJ's errors at Step Two color the ALJ's

17 determination at the subsequent steps. In particular, the ALJ did not consider Plaintiff's

18 depression or anxiety when making his credibility finding and his discussion of the medical

19 evidence does not include a discussion of Plaintiff's mental health. However, the Court does

20 address Plaintiff's argument regarding the evidence submitted to the Appeals Council.

21         Plaintiff contends that remand is required because she presented new and material evidence

22 to the Appeals Council which they declined to consider and make part of the record. Under 42

23 U.S.C. § 405(g), "[r]emand for consideration of new evidence is appropriate if a claimant presents

24 evidence that is material to determining disability, and there is good cause for the failure to

25 produce the evidence earlier." *Wainwright v. Sec'y of Health & Human Servs*., 939 F.2d 680, 682

26 (9th Cir. 1991). To obtain remand, "a claimant must present new evidence that is material, i.e., it

27 must bear directly and substantially on the matter in dispute, and the claimant must show a

28 reasonable possibility that the new evidence would have changed the outcome of the

12

United States District Court
Northern District of California

1    administrative hearing." *Miller v. Berryhill*, No. 16-56635, 2018 WL 1979003, at \*2 (9th Cir. Apr.

2    27, 2018) (internal citations and quotation marks omitted).

3         Here, the Appeals Council declined to consider the evidence and did not make it part of the

4    record because it concluded that bulk of the records post-dated the ALJ's determination and thus

5    to the extent they were based on a new claim of disability, Plaintiff needed to file a new

6    application of disability benefits. (AR 2.)   While the majority of the records do post-date the

7    ALJ's decision, they relate to Plaintiff's *previously claimed* disability of depression and her

8    diagnosis of Post-Traumatic Stress Disorder (PTSD) which, as noted above, the ALJ rejected.[5]  In

9    particular, Plaintiff submitted a December 14, 2016 letter from Kari Petersen, a licensed clinical

10   social worker, who has been providing Plaintiffs "individual psychotherapy for several months"

11   which notes that Plaintiff presents with signs and symptoms consistent with PTSD. (Dkt. No. 17-2

12   at 2.)  This new evidence undermines the ALJ's determination regarding the severity of Plaintiff's

13   depression and PTSD and could result in a different conclusion regarding whether Plaintiff's

14   mental health conditions render her disabled.[6]  *See Miller*, 2018 WL 1979003, at \*2 (concluding

15   that evidence was not material and did not warrant remand where "the new evidence of Miller's

16   ankle condition d[id] not undermine the ALJ's reasons for finding Miller's testimony to be non-

17   credible, nor d[id] it show any additional functional limitations that might have led the ALJ to find

18   him disabled."); *see also Liu v. Barnhart*, No. C 00-4616 SI, 2002 WL 485048, at \*7 (N.D. Cal.

19   Mar. 27, 2002) (concluding that remand for additional consideration of Plaintiff's depressive

20   condition in light of evidence regarding her newly developed allergy to Prozac was appropriate).

21   **C.    Remand**

22        Although Plaintiff initially sought remand for an award of benefits, she has withdrawn that

23   request and now seeks remand so the ALJ can consider the new evidence.  Plaintiff's request for

24   remand is granted.  On remand, the ALJ shall consider Plaintiff's new evidence and shall

25

26

27   [5] Plaintiff attached the records to her motion for summary judgment.  (Dkt. No. 17.)
28   [6] The Commissioner does not argue that Plaintiff lacked good cause for failing to offer this
     evidence earlier; nor could she as the bulk of the evidence post-dates the ALJ's decision.

13

reconsider Plaintiff's application for disability beginning with whether Plaintiff's depression or other mental health issues constitute a severe impairment at Step Two.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED IN PART. Defendant's cross-motion is DENIED. This matter is remanded to the Agency for further consideration as set forth in this Order.

This Order disposes of Docket Nos. 16 and 19.

**IT IS SO ORDERED.**

Dated: July 24, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge